J. Seward Bodihe, J.
This claim has been duly filed and was originally heard by the Honorable William G. Eastoh, Judge of the Court of Claims, wherein damages were awarded the claimant in the sum of $41,124. From this decision the State appealed, and the Appellate Division reversed (16 A D 2d 354) on the law and facts and ordered a new trial in this court. This case was heard on November 27 and 28,1962, in Rochester, New York.
The facts are substantially as follows: Joseph D. Gioia, hereinafter referred to as decedent, was arrested on October 17, 1958, and was charged with the murder of his wife. He was taken to the State Police barracks in Batavia and while there jumped from a second-story window and sustained injuries, among others a fracture of a bone in the ankle. He was then taken to St. Jerome Hospital, where he was treated for his injuries, and was subsequently arraigned and ordered to the Rochester State Hospital, pursuant to sections 658 to 662-f of the Code of Criminal Procedure, for the purpose of determining whether he was in such a state of insanity as to be incapable of understanding the charge against him and making his defense. On October 23, 1958, he was transferred to the Rochester State Hospital, and while there an Ace bandage was placed on his injured ankle. He was put in a seclusion room to which the door was locked, and a nurse or attendant checked him during the evening hours by looking through a small glass window in the door with the aid of a flashlight. On October 26,1958, at approximately 2:30 a.m., the attendant on duty outside his room did *834 not detect any movement on Ms part and entered the room and discovered that he had committed sMcide by strangling himself to death with the Ace bandage, which he had wrapped around his neck.
The contention of the claimant is that the State was negligent in having placed an Ace bandage on the ankle of decedent when, as it is alleged, he had shown previous suicidal tendencies, and it is also alleged that he was not sane. Claimant further contends that the State did not maintain proper supervision of the said decedent, and it is for this alleged negligence that claimant seeks damages. Claimant attempts to prove the foregoing by the testimony of Salvatore R. Grioia, a brother of the deceased, who testified that sometime in 1956 or 1957 said decedent informed him that he wanted to take his own life, and thereafter on his way home from the race track at Batavia, while accompanied by his wife, drove his automobile at such a high rate of speed that it ran into a tree and was demolished. The foregoing incident was not testified to at the first trial before Judge Easton. Salvatore R. Grioia also testified that when he visited his brother in the St. Jerome Hospital, he found him remorseful and irrational. Also, testimony was introduced of the Deputy Sheriffs who were on guard at St. Jerome Hospital that decedent was not conversant and was lying in bed with his eyes closed for long periods of time. This testimony was offered to prove the mental condition of said decedent. However, it must be remembered that while in St. Jerome Hospital, decedent was charged with having murdered his wife and also was receiving injections of demerol in doses of 75 milligrams, and he received at least eight such doses. It is therefore conceivable that the reactions which claimant considers to be those of an insane person are those of a sane person under the sedation of drugs and medicines, together with the duress of having been charged with the murder of his wife.
Claimant’s expert witness, Dr. Harry Paver, who is a psychiatrist, was asked a hypothetical question embracing all of the background of facts present in this case and asked whether in his opinion decedent was mentally ill at the time he committed suicide, to which the doctor replied that he was. Dr. Paver admitted he had never seen decedent and was merely stating his opinion based on a hypothetical question. He further stated that it was his opinion that any person who commits or attempts suicide must be insane. The court has considerable admiration for Dr. Paver, and the court must admit that it has never been trained in psychiatry. We can recall, however, many figures in history and literature who have deliberately chosen self- *835 destruction and who have not been considered insane, as the captain who prefers to go down with his ship and the hero who falls on his sword after his army has been conquered. The decedent in this case had a very strong motive, and we cannot say that the mere fact that he did choose self-destruction is sufficient evidence of his insanity.
Dr. Guy M. Walters, a psychiatrist at the Rochester State Hospital, was called as a witness for the State. He and Dr. Feldman, who was not called as a witness, had been assigned the task of examining decedent upon his admission to the Rochester State Hospital, as required by the Code of Criminal Procedure. Dr. Walters testified that he found decedent to be normal under the prevailing conditions. This determination was the result of a personal examination of said decedent, together with the results of psychological tests which were given him. Dr. Walters went on to state that he considered decedent to be sane and did not consider him suicidal. He stated that he was able to carry on a coherent, rational and logical conversation. Dr. Christopher Terrence, Director of the Rochester State Hospital, testified on behalf of the State that in his opinion, based on the testimony previously given and the hospital records, decedent was sane.
The question before this court is whether the decedent was insane or sane, and if insane then the State of New York owed him a duty of care to protect him against himself. (Hirsh v. State of New York, 8 N Y 2d 125.)
If, however, decedent was sane, then the State owed him no duty of care to protect him from himself and accordingly cannot be held negligent for the resulting suicide. The Appellate Division in its decision in this case on appeal (16 A D 2d 354, 359) stated: “ We know of no case in this or in any other State in which a sane person has been allowed to recover from his custodian for a self-inflicted injury on the ground that the custodian was at fault in failing to prevent the prisoner from inflicting the injury upon himself. ‘ There is no liability where the injury sustained results solely from the acts of the prisoner himself ’ (72 O. J. S., Prisons, § 13, p. 865).” Under section 130 of the Decedent Estate Law, an action for wrongful death can be maintained only if the injured person could have recovered for the injury if death had not resulted. Decedent, while confined to the Rochester State Hospital, was not there because he was insane, but solely for observation to determine whether or not he was able to stand trial, pursuant to the provisions of the Code of Criminal Procedure. The psychiatrists who examined him at this hospital found him to be sane and able to stand trial.
*836 The testimony of Dr. Walters, based on his personal examination of decedent, together with the testimony of Dr. Terrence, outweighs that of Dr. Faver. This court finds nothing in the proof to change the conclusion reached by the Appellate Division that the suicide was the result of a reasoned and deliberate determination of a sane person motivated by remorse and a desire to avoid trial and punishment. It therefore follows that the State is not negligent.
The claim is accordingly dismissed.